## Commonwealth *v.* Laris, Appellant.

Argued November 12, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Louis M. Tarasi, Jr.,* with him *John Alan Conte,* and *Conte, Courtney & Tarasi,* for appellant.

*Robert C. Reed,* Assistant District Attorney, with him *John G. Good, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, December 12, 1968:
Judgment of sentence affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was found guilty of gambling and conspiracy. This appeal challenges the propriety of the lower court's refusal to suppress evidence.

The record discloses that appellant leased a cement block garage situated on thirty acres of land in Beaver County for the purposes of storing saddles, feed and other matters related to the business of raising and breeding horses.

An informant advised the police that gambling activities were being conducted in the garage. As a result, the Pennsylvania State Police on June 14, 1963, at 9:30 p.m., placed the premises under surveillance. They did not, however, obtain a search or arrest warrant. The surveillance was conducted from a hillside overlooking the garage and an adjacent parking area. After noticing cars entering the parking area, the police proceeded to the rear of the garage, where they peered inside the building by looking through cracks in black paint which covered a window. They observed a dice table.

At midnight, on June 22, 1963, again without the benefit of an arrest or search warrant, the officers returned to the garage. They went to "a point in the back of the cement garage building from which point we could overhear what was going on inside." Apparently, the officers pressed their ears next to garage windows because one stated "We heard cards being shuffled and we could hear loose silver change being thrown on a table or thrown in some location, but we heard the silver and cards."

The police then returned to police headquarters where plans for a raid were formulated. On the morning of June 23, 1963, body warrants for the arrest of appellant and others were obtained.

Upon raiding the premises, the police seized coin and currency, playing cards, dice, a dice table and

other gambling accessories, all of which were later introduced at trial over appellant's timely motion to suppress.

Appellant contends that the evidence was improperly introduced because it was the fruit of illegal searches made on June 14 and June 22.

It is apparent that the surveillances of June 14 and 22 furnished information which later served as the basis for the issuance of the arrest warrant on June 23, as well as the source of incriminating testimony and evidence introduced at trial. If the surveillances were conducted in violation of appellant's constitutional rights, his arrest must be invalidated. As a result, the evidence seized at the time of the arrest and the testimony of the police officers at trial relating to the noises and voices they heard on the evenings of June 14 and June 22, having emanated from an unlawful search, must be suppressed. *Wong Sun v. United States,* 371 U.S. 471 (1963).

This case, in my view, is governed by *Katz v. United States,* 389 U.S. 347 (1967). In *Katz* the Supreme Court overturned a conviction based on tape recordings of the defendant's end of telephone conversations placed from public telephone booths. The FBI obtained the recordings by using an electronic listening device attached to the outside of the telephone booths. The enclosed booths were not penetrated physically. The listening device was activated only while Katz was using the phone and was deactivated after he left the booth. The eavesdropping commenced after an investigation established that Katz used these phones to call a known gambler. No effort was made to obtain judicial authorization for the eavesdropping.

The Supreme Court held that, although there was no physical trespass, the eavesdropping constituted an illegal search. The "Government's activities in elec-

tronically listening to and recording the petitioner's words violated the privacy upon which (defendant) justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment. The fact that the electronic device employed to achieve that end did not happen to penetrate the wall of the booth can have no constitutional significance. . . . One who occupies (a telephone booth), shuts the door behind him, and pays the toll . . . is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world. . . . These considerations do not vanish when the search in question is transferred from the setting of a home, an office, or a hotel room, to that of a telephone booth. Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures. . . The Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statements, overheard without any technical trespass under local property law." Likewise, it "cannot turn upon the presence or absence of a physical intrusion into any given enclosure."

Therefore, although the FBI exercised self-restraint by limiting their eavesdropping, the court held that a judicial order permitting any eavesdropping was a prerequisite to admitting the evidence obtained. "Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause.' "

The lesson to be drawn from *Katz* is that police may not deliberately intrude on the privacy of citizens who reasonably expect to insulate themselves from surveillance unless a search warrant is first obtained.

In light of this broad concern expressed in the language of the opinion, I would reject the Common-

wealth's contention that *Katz* on its face is limited to cases involving surveillances conducted by means of electronic devices. This reading overlooks the primary thrust of *Katz*: a person has a right to be secure against invasions of his privacy "upon which he justifiably relied" by police, except in those instances when the police have received proper judicial authorization. This has been described as a "privacy-oriented, functional approach". The Supreme Court, 1967 Term, 82 Harv. L. Rev. 63, at 190 (1968).

Weighed against this standard, the conduct of the police in the instant case must be proscribed. On both June 14 and June 22, they conducted well planned surveillances which were calculated to break through the wall of privacy that defendant and his associates had so elaborately constructed. The police presence at the garage on both occasions was attributable solely to their desire to obtain information concerning defendant. Thus, this case does not present a situation where the police, in conducting official business, have stumbled across illegal activity. Rather, the police drove several miles out of their way to reach the garage and crossed several hundred feet of private property on foot in order to approach the rear of the building. They then, with ear pressed against garage window, and eye peering through a small crack in a window covered by black paint, collected information which led to this prosecution. In my opinion, these facts fall clearly within the forbidden ambit proscribed by *Katz*.

For these reasons, I would vacate the entry of judgment below and order a new trial to be held in accordance with this opinion.

SPAULDING, J., joins in this dissenting opinion.